**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ANTOINE KHOURY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.   04 C 5452** |
| **v.** | ) | |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | **HONORABLE DAVID H. COAR** |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Antoine Khoury ("Khoury") applied for disability insurance benefits ("DIB")

from the Social Security Administration ("SSA").  After the SSA denied his application and his

reconsideration request, Khoury requested and received a hearing.  The Administrative Law

Judge ("ALJ") conducted the hearing and concluded Khoury was not disabled.  The Social

Security Appeals Council denied Khoury and he now seeks judicial review.  Khoury and the

SSA Commissioner, Jo Anne Barnhart (the "Commissioner"), have filed cross-motions for

summary judgment; Khoury seeking to reverse or remand the ALJ's decision, the Commissioner

seeking affirmance.  For the reasons discussed below, this Court **GRANTS** Khoury's motion for

summary judgment and **DENIES** the Commissioner's motion for summary judgment, thereby

rejecting the ALJ's decision and remanding the case for further proceedings consistent with this

Opinion.

## I.    RELEVANT FACTS[1]

**Khoury's Personal History**

Antoine Khoury was born on March 4, 1955.  He is married with five children.  At the

time of the ALJ's decision, Khoury was 48 years old.  Khoury has a high school education.  For

approximately twenty one years prior to the onset of Khoury's impairment, he worked as a fare

box puller and bus driver for the Chicago Transit Authority (CTA).  He also worked part-time as

a school bus driver.

**Khoury's Medical History**

On January 3, 2001 an automobile struck the CTA bus Khoury was driving.  Khoury was

propelled into the air and landed on his knees.  Upon landing on the ground another automobile

ran over his left foot and struck his right side.  Khoury was rushed to an emergency room where

physicians diagnosed him with a sprain of the intertarsal ligaments and a fracture of the base of

his fifth metatarsal bone in his left foot.  Khoury was released from the hospital that same day.

However, two days later, Dr. Sigmund, Khoury's treating physician, placed Khoury's left foot in

a cast.  Two months later, the cast was removed and the fracture generally showed good

alignment.  In May 2001, Khoury was diagnosed with tendonitis in his right shoulder

supraspinatus tendon and neuropahitic pain in his left foot.  The physician gave Khoury a pain

injection for the shoulder pain and prescribed Doxepin and Neuronin pain medications.

Khoury also participated in a work hardening program from May through October 2001.[2]  In

---

[1] Unless otherwise noted, all facts are taken from the certified copy of the administrative record filed with this Court.

[2] According to the American Physical Therapy Association, work hardening is a "highly structured, goal-oriented, individualized intervention program designed to return the

September 2001, Khoury was diagnosed with carpal tunnel syndrome in his dominant right hand. In November 2001, Khoury's other treating physician, Dr. Tuttle, noted that he did not think there was anything further to offer Khoury and that he had reached "maximum medical improvement."

In December 2001, Dr Sigmund noted that Khoury still had problems from carpel tunnel syndrome and shoulder pain including numbness and tingling at night. In May 2002, Khoury underwent a second MRI that showed cervical spondylosis with severe degenerative disk disease at C5-6 and C6-7. In June 2002, Khoury underwent surgery for his carpel tunnel syndrome and was advised not to work for an indefinite period of time. In August 2002, Dr. Sigmund assessed Khoury's residual functional capacity ("RFC") as being able to sit continuously for six hours and stand/walk for less than two hours out of the standard eight hour workday. He also found that Khoury needed to shift positions from sitting to standing at will and that he could lift up to 10 pounds ('lbs") frequently and up to 20 lbs occasionally. Dr. Sigmund reports that Khoury has twenty percent limitation of grip strength in his right hand. In February 2003, Dr. Timothy Culinane reported that Khoury suffers from depression as a result of the accident.

In order to control pain, Khoury utilizes a TENS (transcutaneous electrical nerve stimulation) unit and lumbar sympathetic blocks. He also has taken or is currently taking a variety of prescription drugs including Diclofenac, Hydrocodone, Doxepin, Nuerontin and Voltaren.

---

patient/client to work." American Physical Therapy Association, "Guidelines: Occupational Health Physical Therapy: Work Conditioning and Work Hardening Programs," available at http://www.apta.org/AM/Template.cfm?Section=Policies_and_Bylaws&TEMPLATE=/CM/ContentDisplay.cfm&CONTENTID=26229.

**Khoury's Testimony at the ALJ Hearing**

Khoury testified to facts that were consistent with the facts described above. In addition, Khoury explained that he suffers from drowsiness from taking his prescribed medication, wears a brace to help him walk and suffers from blurry vision due to the pain that he is constantly subjected. He also testified that he is right hand dominant but cannot use his right hand to lift anything heavy. His right hand hurts whenever he shakes someone's hand and although the surgery has helped him be able to close his fingers, the constant pain remains.

Khoury testified that he does not have a normal sleep pattern since the accident; normally he sleeps from 14 to 15 hours a night, but occasionally he will sleep a little as 4 to 5 hours a night. He takes naps throughout the day due to drowsiness. He experiences constant pain in his back, hand and foot. Khoury stated that he only walks to the end of his driveway and back since the accident. He does not drive due to drowsiness. After the accident, his wife or children drive him to the grocery store and he no longer cooks or cleans. Lastly, Khoury testified that his doctors have advised him to refrain from engaging in sedentary work.

**ADMINISTRATIVE LAW JUDGE HEARING**

**Vocational Expert's Testimony**

A vocational expert ("VE"), Linda Gels, testified at the hearing. The VE stated that she had reviewed the exhibit file made available to her. She described Khoury's occupation of CTA bus driver as a "light occupation," his occupation of school bus driver as "light" also, even though the DOT described it as semiskilled and "medium" with a Specific Vocational Preparation Rating ("SPV") of 4,[3] and his box puller occupation as "medium" to "heavy" work.

---

[3] SPV is defined in the DOT as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average

She stated that Khoury was incapable of performing any past relevant work. In response to a hypothetical question put to her by the ALJ, the VE stated that in her opinion, Khoury could perform the duties of other occupations including assembler, hand packager and surveillance systems monitor. These jobs were "sedentary" jobs and in the VE's estimation, Khoury would be able to perform the duties of either of the three positions given his age, education, work experience and exertional limitations.[4] The VE also stated that approximately 25,000 to 30,000 of these jobs existed in the surrounding area of Cook County, Illinois, with the caveat that if one had to lay down during the workday none of the positions would be available. Finally, she stated that the evidence she provided did not conflict with the DOT.

**The Administrative Law Judge's Decision**

To determine whether Khoury was disabled as defined in the Social Security Act, the ALJ conducted a standard five-part inquiry. *See* 20 C.F.R. §404.1520. This required the ALJ to evaluate:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner], *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Knight v. Chater*, 55 F.3d 309, 313 (7th Cir.1995) (quoted in *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000)). An answer of "no" at any step, except Step 3, ends the inquiry and results in a

---

performance in a specific job-worker situation." DOT, Appendix C (4 ed., Rev.1991).

[4] Those exertional limitations included frequently lifting and carrying up to twenty-five pounds, occasionally up to fifty pounds; sitting from six to eight hours a day; standing and walking at least six hours a day; and occasional climbing.

finding that the claimant is not disabled. *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985) (citation omitted). The claimant bears the burden of proof through step four; but at step five the burden shifts to the Commissioner. *Knight*, 55 F.3d at 313.

In conducting the sequential analysis, the ALJ found that Khoury had not engaged in substantial gainful activity that would disqualify him under the first step of the inquiry. In the second step of the inquiry, the ALJ found that Khoury had severe impairments, which significantly limited his ability to perform basic work activities. However, the ALJ found that none of Khoury's impairments, either singly or in combination, was severe enough to meet or medically equal one of the impairments listed in 20 C.F.R. §404, Subpart P, Appendix 1.

The ALJ then considered whether Khoury had sufficient residual functional capacity ("RFC") to perform his past relevant work or other work existing in significant numbers in the national economy. He found that Khoury's impairments precluded the following work activities: 1) lifting more than thirty pounds occasionally and ten pounds frequently; 2) sitting for more than a total of six hours in an eight hour workday; 3) and standing and/or walking for more than a total of two hours in an eight hour workday.

In the fourth step of the sequential analysis, the ALJ found adopted the VE's determination that Khoury could not still perform his past relevant work as a bus driver or box puller. Lastly, he determined that the Commissioner had indeed shown that there existed sufficient jobs in the Cook County area that Khoury was qualified and physically capable of performing.

In his findings section, the ALJ found the Khoury's allegations about his limitations "not entirely credible for the reasons set forth in the body of the decision." Although he found that

Khoury could not perform any past relevant work, he also found that between 25,000 to 30,000 jobs existed in the local economy, the metropolitan Chicago area, which Khoury could perform. In conclusion, the ALJ determined that Khoury was not under a disability as defined in the Social Security Act and was not entitled to DIB. Khoury sought review of the ALJ's opinion from the Appeals Council. The request for review was denied on August 11, 2005.

## II.    STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited. The district court will uphold an ALJ's decision as long as the ALJ's findings of fact are supported by substantial evidence and there are no errors of law. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citing *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The district court reviews the entire administrative record, but *does not* reweigh evidence, resolve conflicts, *decide credibility questions*, or substitute its own judgment for that of the Commissioner. *Clifford*, 227 F.3d at 869 (emphasis added). This is a "deferential, but not entirely uncritical" standard of review, because the ALJ's decision will not stand "if it lacks evidentiary support or [contains] an inadequate discussion of the issues." *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003).

Thus, the district court will affirm the decision if it is reasonably drawn from the record and is supported by substantial evidence, even if some evidence may also support the claimant's position. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Nevertheless, in making his decision, the ALJ must articulate some minimal basis for the conclusions that he reaches so that the reviewing court may "trace the path" of the ALJ's reasoning. *See Diaz v. Chater*, 55 F.3d 300, 307-08 (7th

Cir. 1995). Lastly, although the ALJ may credit certain evidence and discredit other evidence,

he may not simply ignore evidence favorable to the claimant in articulating the basis for his

decision. *See Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998).

## III. ANALYSIS

### A. ALLEGATION OF ERROR REGARDING STEP TWO OF THE SEQUENTIAL ANALYSIS

Khoury alleges that the ALJ erred when he determined that Khoury's impairments did

not last twelve months. However, whether the ALJ erred at this stage of the analysis is

immaterial to the ultimate denial of DIB because the ALJ explicitly went on to fulfill the entire

five-step analysis.

### B. THE ALJ'S FINDING THAT KHOURY WAS ONLY PARTIALLY CREDIBLE

Khoury challenges the ALJ's determination that he was only partially credible. Although

the ALJ's findings of credibility are entitled to special deference and will generally not be

disturbed unless they are "patently wrong" in light of the record, *Powers v. Apfel*, 207 F.3d 431,

435 (7th Cir. 2001), the ALJ must still give specific reasons for findings of credibility, *see Steele*

*v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). A case will be remanded when the ALJ's

decision "lacks evidentiary support or is so poorly articulated" that it is insufficient as a matter

of law. *Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007). The Seventh Circuit has clearly held

that an ALJ must 'build an accurate and logical bridge between the evidence and the result.'"

*Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006).

Khoury argues that Social Security Ruling ("SSR") 96-7p requires an ALJ to discuss

certain factors when assessing credibility; that the ALJ failed to do so; and therefore, the

credibility finding must be rejected. *Policy Interpretation Ruling Titles II and XVI: Evaluation*

*of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, 61 Fed. Reg. 34483 (July 2, 1996). SSR 96-7p explains when a credibility finding is necessary, what factors are to be considered when assessing credibility, and how specific such a finding must be. *Id*. When evaluating an applicant's symptoms (described as the applicant's "own description of his or her physical or mental impairment"), the ALJ "must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id.* When an ALJ finds the applicant's statements concerning his symptoms to be unsubstantiated by the objective medical evidence, the ALJ must make a finding on the credibility of the applicant's statements based on a consideration of the entire case record. *Id.* Such evidence includes medical signs and laboratory findings, the claimant's own statements, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the applicant, and any other relevant evidence in the case record. *Id.*

SSR 96-7p unambiguously instructs the ALJ to make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements. *Id*. To accommodate the frequent situation where an applicant's symptoms indicate a greater severity of impairment than that suggested by the objective medical evidence alone, 20 C.F.R. §§404.1529(c) and 416.929(c) list the factors an adjudicator <u>must</u> consider in addition to the objective medical evidence when assessing the credibility of an individual's symptoms. 61 Fed. Reg. at 34,484. They are: (i) the applicant's daily activities, (ii) the location, duration, frequency, and intensity of the individual's pain or other symptoms, (iii) precipitating and

aggravating factors, (iv) the type, dosage, effectiveness, and side effects of any medication the applicant takes or has taken to alleviate pain or other symptoms, (v) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms, (vi) any other measures used to relieve pain or other symptoms, and (vii) any other facts concerning the applicant's functional limitations and restrictions due to pain or other symptoms. *Id.* Finally, the ALJ's decision must include reasons for the credibility finding that are sufficiently specific to allow subsequent reviewers to determine the weight given to the applicant's statements and the bases for that weight. *Id.*

Khoury argues that the ALJ did not discuss how the factors above led him to the finding of partial credibility. Khoury is correct. The ALJ perfunctorily described Khoury's statements as being "disproportionate to the medical evidence." (R. 24). However, the ALJ also found Khoury not fully credible because Khoury claimed that he was waiting for a light CTA job and that he had not looked for other work for fear of losing his CTA job while litigating his workers' compensation action. (R. 24). The ALJ did not provide an explanation of how this claim impacted his credibility assessment. He must have understood Khoury's statement to mean that the severity of his symptoms were not hindering him from working; instead his other concerns, which had nothing to do with his symptoms, were the reasons for his failure to work. The ALJ did not commit error by making such an inference.

In addition to Khoury's statements, the ALJ also noted that an independent medical examiner, who provided a medical opinion to a workers' compensation insurance company pursuant to Khoury's separate workers' compensation litigation, had "discounted the findings and functional limitations established by other physicians who evaluated" Khoury. (R. 24). The

ALJ was entitled to rely on this opinion as contradictory of Khoury's other medical evidence and

indicative of the fact that Khoury's statements regarding his symptoms were not fully credible.

The problem is that the ALJ did not explain why the assessment of the independent examiner

was "probably more realistic" than Khoury's other medical evidence. Instead, he simply

discounted the other medical evidence.

Even though there is some support in the record (Khoury's explanation of why he was

not working and the independent medical opinion) to support the ALJ's credibility assessment, it

was not enough. The ALJ placed significant weight on Khoury's admission that he was not

working because he feared losing his CTA job while litigating his workers' compensation action.

Doing so was not improper. He also explicitly mentioned that the findings of an independent

medical examiner discounted the findings and functional limitations established by others who

had examined Khoury, but he never actually explained how. (R. 24.) Although the ALJ gave

Khoury the benefit of the doubt in accepting the functional limitations established by Disability

Determination Services expert in assessing Khoury's residual functional capacity (as opposed to

the limitations offered by the independent medical examiner or Dr. Sigmund), he still used the

perceived but unexplained discrepancy between the findings of an independent medical examiner

and the findings of the others who had examined Khoury as indicative of Khoury's partial

credibility.

This Court finds the ALJ's credibility assessment was insufficient as a matter of law.

First, the Seventh Circuit has recognized that although Social Security Rulings are merely

"interpretive rules intended to offer guidance to agency adjudicators" and they "do not have the

force of law or properly promulgated notice and comment regulations," they are nonetheless

"binding on all components of the Social Security Administration, in accordance with 20 C.F.R. 422.406(b)(1)," and are to be relied upon by ALJs as precedents in adjudicating cases. *Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999).

Second, the ALJ did not discuss the factors outlined in 20 C.F.R. §§404.1529(c) and 416.929(c) and required by SSR 96-7p in the credibility finding. Incredibly, the Commissioner urges this Court to infer that the ALJ did not discuss these factors because either Khoury did not complain of them or there was no basis to discuss them. But for this Court to make such an inference would be improper and obviate the ALJ's obligations under SSR 96-7p. 20 C.F.R. §404.1529(c)(3) guarantees to an applicant that the adjudicator will carefully consider any other information submitted by the applicant in addition to the objective medial evidence. Therefore, the ALJ was required to demonstrate in his opinion that he had done so. His failure to do so renders his finding insufficient as a matter of law.

## C.    THE ALJ'S FINDING THAT SIGNIFICANT JOBS EXISTED IN THE LOCAL ECONOMY

Khoury also alleges that the ALJ committed legal error at step five of the sequential analysis. In this step, the Commissioner bears the burden of proving that the claimant is capable of performing work existing in significant numbers in the national economy. In performing his analysis under step five, the ALJ relied heavily on the testimony of the VE. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984). The ALJ presented a hypothetical question to the VE in which he said that Khoury could perform sedentary work with light lifting and that he had a twenty percent reduction in grip and grasp strength in his right hand, which is his dominant hand as well as his age, education and vocational background. The VE responded that Khoury could

perform three occupations: assembler, hand packager and surveillance system monitor and that there were 3,000, 1,500 and 1,000 of these positions in the local economy, respectively.

Khoury complains that the ALJ committed error when he relied on the testimony of the VE because she did not provide the underlying data upon which her opinion was based and she used outdated census information from 1990. In addition, according tho Khoury, the ALJ committed error when he failed to inquire into any possible conflict between the testimony provided by the VE and information provided in the DOT. Khoury also contends that the DOT listings for two out of the three jobs Khoury was found capable of performing require manual dexterity, which Khoury does not possess; while the third requires alertness, which he does not possess due to prescribed medication. Therefore, Khoury argues that the jobs finding was inconsistent with DOT without a reasonable explanation.

This court agrees with Khoury in that the step five determination was not supported by substantial evidence. Although the ALJ specifically mentioned that he was using the testimony of the VE in addition to other factors, including Khoury's age, educational background, work experience and RFC, there is no doubt that he utilized the VE's testimony. So the question is really whether the ALJ committed legal error by using the VE's testimony in arriving at his decision.

In *Prochaska v. Barnhart*, the Seventh Circuit held that when an ALJ relies on expert vocational evidence as substantial evidence to support a determination of nondisability, he must comply with SSR 00-4p and ask the expert how her testimony corresponds to the DOT and also obtain a reasonable explanation for any discrepancy. 454 F.3d 731, 735 (7th Cir. 2006). Here,

the ALJ did not ask the VE whether her testimony conflicted with the DOT and the SCO (Specific Characteristics of Occupations).

In *Donahue v. Barnhart*, the Seventh Circuit held that an ALJ is entitled to accept a VE's testimony *when the VE's testimony is unquestioned*, even if it is later determined that testimony differs with the DOT. 279 F.3d 441, 447 (7th Cir. 2002). <u>Donahue</u> states "[r]aising a discrepancy only after the hearing... is too late. An ALJ is not obliged to reopen the record. On the record as it stands-that is, with no questions asked that reveal any shortcomings in the vocational expert's data or reasoning-the ALJ was entitled to reach the conclusion she did." 279 F.3d at 447.

Here, the ALJ did not make the necessary inquiry into the VE's testimony despite the affirmative duty to do so. Nor did he allow Khoury to probe into the VE's data that supported her methodology at the hearing. Khoury questioned the VE regarding her data, bu the ALJ unambiguously directed Khoury to "move on." (R. 454.) He directed the VE to supply the missing data which would then be given to Khoury's counsel. (R. 453.) However, the data was never shared with counsel. (R. 123 and 131.)

In *McKinnie v. Barnhart*, the Seventh Circuit explained that "an ALJ may depend upon expert testimony only if the testimony is reliable." 386 F.3d 907, 910 (2004). The *McKinnie* Court also stated that "the data and reasoning underlying that bottom line must be 'available on demand' if the claimant challenges the foundation of the vocational expert's opinions." *Id*. at 911 (citing *Donahue*, 279 F.3d at 446). This means that before VE testimony can be found reliable, obviously the ALJ must be able to scrutinize the underlying data purported to support the testimony. The relevant facts in *McKinnie* are completely analogous to the relevant facts

here.  There, plaintiff's counsel attempted to contest the reliability of the VE's testimony.  386

F.3d at 911.  Here, Khoury's counsel made the same attempt.  In *McKinnie*, the data used to

support the testimony was never made available to the ALJ or the Plaintiff.  Here, the underlying

data was never made available to the ALJ or Khoury.  The VE submitted a letter that explained

that her reasoning was based on a combination of her own background, education, experience,

surveys and data from the DOT, the U.S. Census, and the Bureau of Labor statistics.  (R. 123 and

423.)  But that letter was of little use because it still did not contain the surveys or other

supporting data.  Furthermore, at the hearing in this case, the ALJ failed to even ask whether the

VE's opinion was consistent with the DOT and cut off Khoury's inquiry into the reliability of

her opinion.[5]  The *McKinnie* court concluded that the ALJ was not entitled to rely on the VE's

testimony.  Likewise, this Court concludes that here, the ALJ was not entitled to rely on the VE's

testimony either.

## D.     THE RESIDUAL FUNCTIONAL CAPACITY FINDING

Khoury argues that the ALJ did not properly assess his RFC.  His contentions amount to

a laundry list of hyper-technical points.  In his opposition brief to Defendant's memorandum in

support of its motion for summary judgment, Khoury alleges that the ALJ's determination of

RFC was erroneous but he did not include this argument as a basis for remand in his own motion

for summary judgment.  After reading Khoury's opposition brief, this Court concludes that

Khoury did not raise this issue as a basis for remand.  Nevertheless, as the Commissioner

explains in her own memorandum in support of her motion for summary judgment, the ALJ's

_____

[5] The parties dispute the reasonability of the ALJ's 15 minute time limit.  The time limit
is not relevant.  What is relevant is that the ALJ explicitly told Khoury's counsel to move on
when he was attempting to discover the bases for the VE's opinion.

credibility determination of Khoury's subjective complaints was a factor in his assessment of

RFC.  Since this Court is remanding the case so that a proper credibility determination be made,

RFC should also be reassessed.

## IV.    CONCLUSION

For the foregoing reasons, this Court **GRANTS** Khoury's motion for summary judgment,

**DENIES** the Commissioner's motion for summary judgment, and therefore remands this case

for a proper credibility analysis and the step five determination, under SSR 96-7p and 00-4p,

respectively.


Enter:

/s/ David H. Coar
David H. Coar
United States District Judge


Dated: **September 28, 2007**